UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 25-60551-CIV-DIMITROULEAS/HUNT

STARMARK FINANCIAL, LLC,

        Plaintiff,

vs.

VASANT NANAVATI,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on Defendant's Motion to Dismiss ("Motion"). ECF No. 32. The Honorable William P. Dimitrouleas, United States District Judge, referred the Motion to the undersigned United States Magistrate Judge for appropriate rulings. ECF No. 36; *see also* 28 U.S.C. § 636(b); S.D. Fla. L.R., Mag. R. 1. Upon thorough and careful review of the Motion, the Response, ECF No. 34, the Reply, ECF No. 35, and being otherwise fully advised in the premises, the undersigned respectfully RECOMMENDS that the Motion be GRANTED for the reasons below.

## BACKGROUND

The following facts are based on the allegations set forth in the Complaint. ECF No. 1. Plaintiff Starmark Financial, LLC ("Starmark") is a Florida limited liability company based in Deerfield Beach, Florida. *Id.* at 1. Starmark's Chief Executive Officer ("CEO") is Brett Silver, who lives in Florida. *Id.* Non-party Luther Appliance & Furniture Sales Acquisition LLC ("Luther") is a retail seller of merchandise. *Id.* at 2. Luther's business model required loans from a third-party creditor to fulfill sales orders. *Id.*

In December 2022, Starmark entered into a contract with Luther for the purchase of the majority of Luther's accounts. *Id.* at 2. At this time, non-party First Avenue Funding ("First Avenue") was the creditor that provided funds to Luther in support of its sales orders. *Id.* As a result, First Avenue held liens on Luther's accounts. *Id.*

In March 2023, Prosperitas Partners LLC ("Prosperitas") acquired Luther. *Id.* at 3–4. Prosperitas was owned in part by another company, 9th Planet Partners LLC ("9th Planet"), which was wholly owned by Defendant Vasant Nanavati ("Defendant"), who is an individual and nonresident of Florida.[1] *Id.* at 4. Through Defendant's ownership of 9th Planet, Defendant held a 12.63% membership interest in Prosperitas. *Id.* Shortly after Prosperitas's acquisition of Luther, Prosperitas appointed one of its members, Brad Powers, to serve as Luther's CEO. *Id.* Powers was the initial manager of the relationship between Starmark and Luther. *Id.*

On or about October 20, 2023, Powers delegated management of the Luther-Starmark relationship to Defendant. *Id.* From that point on, Defendant "was directly involved in all aspects of the Luther-Starmark relationship." *Id.* Starmark continued purchasing accounts from Luther. *Id.* Unbeknownst to Starmark at the time, Luther began running a "double-pledging" scheme. *Id.* Essentially, ownership of the accounts was pledged both to First Avenue and to Starmark. *Id.* Defendant knew about this double-pledging scheme as early as October 2023 and also knew that Luther was experiencing "financial challenges." *Id.* at 7.

---

[1] Starmark alleges that Defendant is a citizen of New York. ECF No. 1 at 1. However, Defendant asserts in his Motion that he is a resident of Rhode Island. ECF No. 32 at 1. For the purposes of this analysis, it suffices that Defendant is not a resident of Florida.

On January 12, 2024, Defendant emailed Starmark, stating that "Starmark would fund Luther's receivables moving forward." *Id.* at 4. On January 17, 2024, Defendant met in person with Powers (CEO of Luther), Silver (CEO of Starmark), and Ken Annarelli (Chief Financial Officer ["CFO"] of Starmark) to discuss the purchasing and funding of Luther's accounts. *Id.* The meeting took place in Florida.[2] Defendant said to Silver and Annarelli that First Avenue was "no longer in the picture." *Id.* at 5.

Following that meeting, Defendant emailed Starmark with instructions for wiring funds to a Luther bank account. Based on Defendant's representations, Starmark sent approximately $824,706.97 between January and February 2024 to fund Luther's accounts. Shortly after, Defendant stopped communicating with Starmark.

On or about October 9, 2024, Starmark was informed that Powers had died. *Id.* at 5. Fred Larcombe, the CFO of Luther, held a series of calls with Defendant and Starmark over the next two weeks. *Id.* These calls took place on a daily basis. *Id.* at 4. Larcombe informed Starmark about Luther's insolvency, explained that Luther was unable to operate, and "admitted there was fraud in Luther's business dealings." *Id.* at 6.

On or about October 30, 2024, Luther began winding down their operations.[3] Following instructions from Defendant and other members of Prosperitas, Luther "refused to turn over payments from the accounts owned by Starmark or provide the corresponding

---

[2] "[A] court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff." *Whitwam v. JetCard Plus, Inc.*, 34 F. Supp. 3d 1257, 1259 (S.D. Fla. 2014). The Complaint does not specify where this in-person meeting took place, but the undersigned infers in Starmark's favor that it was Florida. This is not disputed by Defendant. Indeed, Defendant concedes that "Defendant's only Florida contact was one dinner meeting." ECF No. 32 at 2.

[3] Luther underwent a bankruptcy proceeding. *See In re Luther Appliance & Furniture Sales Acquisition LLC*, No. 25-10163 (Bankr. S.D. Fla. 2025).

3

financial data." *Id.* at 6. Defendant "directed this withholding of payments and data." *Id.* Additionally, Defendant "directly benefited financially," evidenced by "questionable wire transfers from Luther's accounts to Prosperitas members." *Id.* at 7.

Based on the foregoing, Starmark filed two lawsuits in this Court. The first lawsuit was filed against Luther for breach of contract and conversion.[4] *See Starmark Fin., LLC v. Luther Appliance,* No. 24-62357-CIV-DIMITROULEAS/HUNT, 2025 WL 531932 (S.D. Fla. Jan. 6, 2025)*.* Starmark obtained a default judgment against Luther in that case. *See* ECF No. 37.

Starmark brought the instant suit against Defendant while the suit against Luther was still pending. *See* ECF No. 1. The Complaint alleges breach of fiduciary duty and fraud. *See id.* at 8–12. The basis of these claims is that Defendant breached his fiduciary duties of care, loyalty, good faith, and full disclosure by misrepresenting Luther's financial situation and that Defendant defrauded Starmark through false statements of material facts about Luther's finances. *See id*. As relief, Starmark seeks damages, equitable restitution, a constructive trust, and attorney's fees and costs. *Id.* at 13. Now before the undersigned is Defendant's Amended Motion to Dismiss. ECF No. 32.

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "To meet this 'plausibility standard,' a plaintiff must 'plead[] factual content that allows the

---

[4] "A court may take judicial notice of its own records and the records of inferior courts." *United States v. Rey*, 811 F.2d 1453, 1457 (11th Cir. 1987).

court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Arias v. Integon Nat'l Ins. Co.*, No. 18-22508-CIV-ALTONAGA/GOODMAN, 2018 WL 4407624, at *2–3 (S.D. Fla. Sep. 17, 2018) (quoting *Iqbal*, 556 U.S. at 678). In considering a motion to dismiss, "the complaint must be construed in a light most favorable to the plaintiff and the factual allegations taken as true." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). Unsupported allegations and conclusions of law, however, will not benefit from this favorable reading. *See Iqbal*, 556 U.S. at 679.

### A. *Pro se* pleadings

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) (citation omitted). Still, a *pro se* litigant must abide by "the relevant law and rules of court, including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989); *see also Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993) ("[A] court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it.").

## **DISCUSSION**

Defendant argues that dismissal of the Complaint is warranted on multiple grounds. The undersigned addresses each in turn. Construing the Complaint in the light most favorable to Starmark, s*ee Brooks*, 116 F.3d at 1369, the undersigned agrees.

5

### A. Lack of Personal Jurisdiction

Defendant argues that the Court lacks personal jurisdiction over him because he is a nonresident of Florida. ECF No. 32 at 1. Federal courts generally consider two steps to determine if there is specific personal jurisdiction over a nonresident defendant:

> First, the court must determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute. Second, if the court determines that the forum state's long-arm statute has been satisfied, it must then decide whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment.

*Del Valle v. Trivago GmbH*, 56 F.4th 1265, 1272 (11th Cir. 2022) (citations omitted).

Starmark relies on § 48.193(1)(a)(2) of the Florida long-arm statute, which "provides that a nonresident defendant is subject to personal jurisdiction in Florida for any cause of action arising from committing a tortious act within Florida." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013) (cleaned up). The Florida Supreme Court "held that a defendant's physical presence is not necessary to commit a tortious act in Florida." *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1208 (Fla. 2010).

Defendant asserts that his only alleged act in Florida was "attending a single dinner meeting with [Starmark] executives" and "[a] single, isolated dinner is insufficient to establish purposeful availment." ECF No. 32 at 1. Yet "[a] significant single act or meeting in the forum state has been held sufficient for personal jurisdiction there." *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 858 (11th Cir. 1990); *see Ileyac Shipping, Ltd. v. Riera-Gomez*, 899 So. 2d 1230, 1232 (Fla. 3d DCA 2005) ("[T]he commission of the tortious conduct alleged in this action, although only a single act, constitutes sufficient minimum contacts."). Significant acts underlying the Complaint took place at this meeting, so this is a sufficient basis for personal jurisdiction.

In addition, the Complaint alleges that Defendant communicated regularly with Starmark by phone and email between October 2023 and February 2024. These communications were substantive business discussions about the Luther-Starmark deal, and they include the material misrepresentations forming the basis of the suit. Though Defendant was not physically present in Florida, these communications were "purposefully directed" toward Florida residents running a Florida company. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). These remote communications may also serve as a basis for jurisdiction. *See Arona v. 3RD Home Ltd.*, No: 8:20-cv-1647-CEH-JSS, 2021 WL 825047, at *6 (M.D. Fla. Mar. 4, 2021) (finding that Tennessee defendant was subject to personal jurisdiction in Florida because defendant solicited Florida plaintiff to invest in Cayman Islands company "through telephonic and email communications").

As to the due process inquiry, Defendant makes no argument to show that the exercise of jurisdiction does not comport with "traditional notions of fair play and substantial justice." *Louis Vuitton*, 736 F.3d at 1355. The undersigned concludes that this Court has personal jurisdiction over Defendant.

**B. Improper Venue**

Defendant argues that venue in the Southern District of Florida is improper. ECF No. 32 at 2. Starmark responds that venue is proper because "a substantial part of the events or omissions giving rise to the claim occurred" in this District. 28 U.S.C. § 1391(b)(2). Though Starmark cites to the federal venue statute, Starmark's argument appears to be based on the legal standard under Fla. Stat. § 47.051, which is not at issue here. *Kennedy v. Fla.*, No. 22-21827-CIV-WILLIAMS, 2022 WL 22826592, at *2 (S.D. Fla. Dec. 30, 2022) ("[F]ederal law controls the question of proper venue.").

Under federal law, the plaintiff bears the burden of showing that venue in the forum is proper. *See Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004). In considering Defendant's motion to dismiss,

> [t]he court must accept all allegations of the complaint as true, unless contradicted by the defendants' affidavits, and when an allegation is so challenged the court may examine facts outside of the complaint to determine whether venue is proper. The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff.

*Id.* (citations omitted). Additionally, "the Eleventh Circuit has stated that 'only the events that directly give rise to a claim are relevant' and that 'of the places where the events have taken place, only those locations hosting a "substantial part" of the events are to be considered.'" *Greiser v. Drinkard*, No. 17-60975-CIV-DIMITROULEAS/SNOW, 2017 WL 7788165, at *1 (S.D. Fla. Dec. 8, 2017) (citation omitted).

Under that standard, it becomes apparent that Defendant made "acts or omissions" in this District. *See Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003). Defendant met here with Starmark representatives for business. ECF No. 1 at 5. At that meeting, Defendant "expressly represented to Starmark that First Avenue was 'no longer in the picture.'" *Id.* That representation was ultimately what led Starmark to begin wiring money directly to Luther, so it was an action with "a close nexus to the wrongs claimed by Plaintiff." *Watson v. Cmty. Educ. Ctrs., Inc.*, No. 2:10-cv-00778-36SPC, 2011 WL 3516150, at *4 (M.D. Fla. 2011). In addition, nothing in the Complaint suggests that any other District would be a more appropriate venue. *Compare LLW Enter., LLC v. Ryan*, No. 8:19-CV-1641-T-35AAS, 2020 WL 2630859, at *14 (M.D. Fla. May 4, 2020) (denying motion to dismiss for improper venue where plaintiffs alleged "that [d]efendants committed torts here; attended a meeting in Florida, engaged in communications through

email and telephone with . . . a Florida resident; and interfered with contracts containing Florida venue clauses") *with Watson*, 2011 WL 3516150, at *4 (finding that venue was in New Jersey because in-person contract negotiations occurred twice in New Jersey and once in Florida and telephone calls and e-mails originated from New Jersey). The undersigned concludes that venue is proper.

### C. Insufficient Service of Process

Defendant argues that Starmark did not properly serve him with the Complaint.[5] ECF No. 32 at 2. The relevant facts are as follows. On March 25, 2025, a summons was issued against Defendant at a New York address. ECF No. 7. On April 8, 2025, an affidavit from the process server was filed stating that the service was attempted but unsuccessful. ECF No. 9. On May 13, 2025, another summons issued against Defendant. ECF No. 11. This time, substituted service was attempted through Florida's Secretary of State. *Id.*

On June 24, 2025, this Court issued an Order requiring that Starmark file "proof of service or show cause why this action should not be dismissed for failure to perfect service of process." ECF No. 12 at 1. In response, Starmark submitted a Notice of Filing. ECF No. 13. Attached to that Notice of Filing was a letter from Starmark's counsel to Defendant dated June 3, 2025. ECF No. 13-1.

On July 3, 2025, Defendant filed his first Motion to Dismiss. ECF No. 14. He did not raise insufficient service of process as a ground of dismissal in that filing, but he

---

[5] In support of his argument, Defendant cites to "*Abraham v. Universal Ins. Co. of N. Am.*, 614 So.2d 767, 769 (Fla. 4th DCA 1993)." The undersigned is unable to find this authority. Indeed, the citation appears to be associated with *Beckham v. St. Paul Fire & Marine Ins. Co.*, 614 So.2d 760, 767 (La. Ct. App. 1993), which does not include relevant discussion.

9

quickly sought leave to amend his motion. ECF No. 17.  The Court granted the requested leave, finding that Starmark would not be prejudiced by that relief.  *See* ECF No. 31 at 2. Defendant filed the instant Motion on July 28, 2025.  ECF No. 32.

"Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served."  *Pardazi v. Cullman Medical Center*, 896 F.2d 1313, 1317 (11th Cir. 1990).  Federal Rule of Civil Procedure 4 sets forth the means for accomplishing proper service of process, including "that a plaintiff may use any method of service allowed in the state where the district court is located." *Orient Holding v. Assicurazioni Generali SpA*, No. 18-80899-CIV-ROSENBERG/REINHART, 2018 WL 5098855, at *1 (S.D. Fla. Aug. 17, 2018).  "Once a defendant challenges the sufficiency of process, the plaintiff has the burden to establish proper service of process."  *Id.* (citation omitted).

Starmark contends that it effectuated service under Fla. Stat. § 48.161 (2023),[6] which permits "substituted service of process on a nonresident individual . . . by sending a copy of the process to the office of the Secretary of State."  Fla. Stat. § 48.161(1).  The statute requires, among other things, notice to the party being served, filing of "proof of service or return receipts showing delivery to the other party by mail or courier . . . unless the party is actively refusing or rejecting the delivery of the notice," and "[a]n affidavit of compliance of the party effectuating service or such party's attorney . . . filed within 40 days after the date of service on the Secretary of State or within such additional time as

---

[6]  The version of Fla. Stat. § 48.161 that was "in effect when [the] cause of action accrue[d]" was the 2023 version.  *Angarita v. Hypertoyz, Inc.*, No. 23-20695-CIV-SCOLA/GOODMAN, 2023 WL 5289260, at *2 (S.D. Fla. Aug. 16, 2023).  The statute has since been amended.

the court allows." Fla. Stat. § 48.161(2).  That affidavit "must set forth the facts that justify substituted service . . . and that show due diligence was exercised in attempting to locate and effectuate personal service."  *Id.*  "The technical requirements of substitute service . . . must be 'strictly compl[ied] with.'"  *GEICO Marine Ins. Co. v. Seaside Mobile Marine, LLC*, No. 8:21-CV-1972-CEH-TGW, 2024 WL 1580082, at *1 (M.D. Fla. Apr. 11, 2024) (citation omitted).

Based on the letter attached to the Notice of Filing dated June 24, 2025, it appears that Starmark complied with the notice requirement.  *See* ECF No. 13-1 at 3.  But Starmark failed to file any "proof of service or return receipts showing delivery" to Defendant.  Fla. Stat. § 48.161(2); *see HDI Glob. Ins. Co. v. Amerijet Int'l Inc.*, No. 22-22235-CIV-ALTONAGA/TORRES, 2023 WL 3778241, at *4 (S.D. Fla. May 5, 2023) (concluding that plaintiff was noncompliant with technical requirements of statute where plaintiff "has not filed a postal return receipt").  A return receipt may not be required if the defendant "is actively refusing or rejecting the delivery of the notice," Fla. Stat. § 48.161(2), but Starmark has failed to demonstrate that Defendant "ma[de] it impossible for the plaintiff to serve him by mail or otherwise."  *Baxter v. Miscavige*, No. 8:22-CV-986-TPB-JSS, 2023 WL 1993969, at *9 (M.D. Fla. Feb. 14, 2023) (citation omitted).  Additionally, Defendant failed to file a timely affidavit of compliance.  The affidavit of compliance should have been filed by Monday, June 23, 2025.  Here, Starmark did not file an affidavit of compliance until August 4, 2025, which was after Defendant challenged service.  *See* ECF No. 34-1.[7]

---

[7] The undersigned does not consider the substantive contents of the affidavit because "[a]n affidavit attached to a response to a Rule 12(b)(6) motion to dismiss, which was not attached to, or incorporated by reference in the complaint, does not modify the complaint

11

Based on the failure to follow the technical requirements for substituted service, dismissal for improper service is warranted. The Motion should be granted on this ground.

### D. Failure to State a Claim

Defendant argues that Starmark's claims fail because the Complaint fails to plead fraud with particularity, fails to allege personal participation, and fails to state a claim of breach of fiduciary duty. ECF No. 32 at 2–3. Starmark's allegations that it trusted Defendant to facilitate its business relationship between Luther and Starmark plausibly gave rise to a fiduciary duty relationship, and Defendant's misrepresentations colorably amount to a breach of that duty. *See E. Coast Assemblers, Inc. v. Nunez*, No. 24-80090-CIV-DIMITROULEAS, 2025 WL 2723396, at *2 (S.D. Fla. Aug. 14, 2025) (stating elements of breach of fiduciary duty). Also, Starmark has "alleged the 'who,' 'what,' 'when,' 'where,' and 'how,' of the fraud," including Plaintiff's express statement that First Avenue is "out of the picture," so dismissal for failure to state a claim is not appropriate. *Quail Cruises Ship Mgmt., Ltd. v. Agencia de Viagens CVC Tur Limitada*, 847 F. Supp. 2d 1333, 1342 (S.D. Fla. 2012). The Motion should not be granted on this ground.

### E. Failure to Join Indispensable Parties

Lastly, Defendant argues that Luther and the estate of Brad Powers are indispensable parties to this suit. To determine whether a party must be joined under Fed. R. Civ. P. 19, the Court applies a two-step test:

> First, under Rule 19(a), the court determines "whether the person in question is one who should be joined if feasible." Second, for all such necessary parties, a court determines whether the Rule 19(b) factors permit

---

and cannot be considered in deciding the motion to dismiss." *Scottsdale Ins. Co. v. Ulgm, Inc.*, No. 14-21084-CIV-LENARD/GOODMAN, 2014 WL 11906638, at *3 (S.D. Fla. July 14, 2014).

> the litigation to continue if the party cannot be joined, or instead whether they are indispensable.

*Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1039 (11th Cir. 2014) (citations omitted).  A party is required when "(1) the court cannot afford complete relief among the existing parties; (2) prejudice would result to the absent party's ability to protect itself in the instant action; or (3) the nonparty's absence would create a substantial risk that the existing parties would incur inconsistent or duplicative obligations." *Anderson v. AIG Prop. Cas. Co.*, No. 220CV774FTM38MRM, 2020 WL 6321867, at *1 (M.D. Fla. Oct. 28, 2020) (citation omitted).  The moving party bears the burden of establishing that the absent party is required.  *See Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1347 (11th Cir. 2011).

Defendant has not shown that he is unable to pay damages or comply with other relief requested, so it appears that complete relief is available among the present parties. *See Winn-Dixie*, 746 F.3d at 1039 ("The district court could award all of the requested relief without haling the landlords into court because Big Lots was fully able to pay damages and comply with injunctions.").  Additionally, "[t]he fact that [Defendant] may later have claims for indemnity or contribution against [the absent party] is of no consequence." *Compania Chilena De Navegacion Interoceanic, S.A. v. D.H.C. Trucking, Inc.*, No. 15-22494-CIV-GAYLES, 2016 WL 1722425, at *11–12 (S.D. Fla. 2016).

Defendant has also not shown that the absent parties would be unable to protect their interests or be subjected to "inconsistent obligations."  It is undisputed that both Luther and Powers are implicated in the facts of this case, but "[a] party is not necessary simply because . . . two claims share common facts." *Raimbeault v. Accurate Mach. & Tool, LLC*, 302 F.R.D. 675, 682 (S.D. Fla. Oct. 2, 2014).  "[W]here two suits arising from

13

the same incident involve different causes of action, defendants are not faced with the potential for double liability because separate suits have different consequences and different measures of damages."[8] *Winn-Dixie*, 746 F.3d at 1040. This is not a situation where a single defendant is "at risk of paying twice for the same liability" because Luther is not named here and Defendant is not named in the first suit. *Innotex Precision Ltd. v. Horei Image Prods.*, 679 F. Supp. 2d 1356, 1362 (N.D. Ga. 2009).

At any rate, the "ultimate test" to determine whether a defendant is an indispensable party is "whether in the absence of the [defendant], the Court can enter a final judgment consistent with equity and good conscience which would not be in any way unfair or inequitable to plaintiff." *Monroe v. Cont'l Tire the Ams., LLC*, 807 F. Supp. 2d 1129, 1132 (M.D. Fla. 2011). The undersigned finds that neither equity nor good conscience require joinder of Luther or the estate of Brad Powers.[9]

---

[8] If this action included a breach of contract claim, there would be greater concern of Luther's interests being implicated because Luther—not Defendant—is the contracting party. *See HDR Eng'g, Inc. v. R.C.T. Eng'g, Inc.,* No. 08-81040-CIV-MARRA, 2010 WL 2402908, at *2 (S.D. Fla. June 15, 2010) ("Parties to a contract are indispensable when a suit concerns the rights and obligations afforded by the contract." (collecting cases)).

[9] Although Starmark argues that the absent parties need not be joined because "it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit," *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990), it is not clear that Luther and the estate are, indeed, joint tortfeasors for breach of fiduciary duty and fraud.

14

**RECOMMENDATIONS**

For the reasons set forth above, the undersigned hereby RECOMMENDS that Defendant's Motion to Dismiss, ECF No. 32, be GRANTED for insufficient service of process. The Complaint, ECF No. 1, should be DISMISSED without prejudice.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2016); *see Thomas v. Arn*, 474 U.S. 140 (1985).

DONE AND SUBMITTED at Fort Lauderdale, Florida this 26th day of January 2026.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

All Counsel of Record

Vasant Nanavati
125 Providence Street
West Warwick, RI 02893
PRO SE